IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| OLIVIA J. JORDAN | * | CIVIL ACTION NO. 05-0249 |
| VERSUS | * | JUDGE JAMES |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HAYES |

### REPORT AND RECOMMENDATION

Plaintiff, Olivia J. Jordan ("Jordan"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits for the period between May 30, 1996, through November 30, 1998. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **AFFIRMED, and this matter dismissed with prejudice.**

Introduction

Jordan, who is currently fifty-six years old, applied for disability benefits for the period between May 30, 1996, through November 30, 1998.[1] She has a tenth grade education, and her previous work experience includes employment as a classroom aide for the mentally challenged,

---

[1] Jordan initially filed her application on February 5, 1997. Tr. 88-95. After a hearing on March 26, 1998, the presiding ALJ denied Jordan's application. Tr. 53-60. The Appeals Council, however, remanded the case for a second hearing, citing the ALJ's failure to evaluate the examining source opinion of John T. Weiss, M.D. that Jordan could not perform any gainful work activities. Tr. 81-84. The present appeal stems from the ALJ's decision in the second hearing.
  Prior to the Appeals Council's remand of the decision from the hearing on March 26, 1998, Jordan filed a claim for disabled widow's benefits after her husband passed away. Tr. 21. The State agency found that she was disabled, effective December 1, 1998, the month she attained age 50. Tr. 22. Therefore, the Appeals Council's remand was limited to the period between the onset of her alleged disability, May 30, 1996, through the date that the Commissioner determined that she was disabled, November 30, 1998. Tr. 22.

a machine presser, and a housekeeper. Tr. 23. Jordan's last period of employment ended in 1996 shortly before she filed her application for disability benefits. Tr. 484. In her application, Jordan alleged that the was disabled due to residual pain from an injury to her neck, shoulder, knee, and lower back during a fall; hypertension; headaches; dizziness; and chest pain.

Standard of Review; Substantial Evidence

This Court will uphold an ALJ's determination that a claimant is not disabled if the findings of fact upon which it is based are supported by substantial evidence, and if it was derived from a proper application of relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). At no time should the Court "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.

1987).

In this case, Jordan alleges the following points of error in the fifth step of the above analysis: (1) the ALJ wrongfully rejected the opinions of two examining consultative physicians in making a residual functional capacity ("RFC") assessment; and (2) the ALJ failed to include all of Jordan's limitations in hypothetical questions to the vocational expert regarding her ability to work in the national economy. None of these contentions are persuasive.

Rejection of Consultative Physicians' Opinions

Jordan alleges that the ALJ wrongfully (1) rejected Dr. John T. Weiss' ("Weiss") opinion that her impairments caused "sufficient pain and discomfort preventing her from doing most any gainful employment activities"; (2) rejected Dr. Robert Po's opinion that Jordan could never climb, balance, stoop, crouch, kneel, and crawl; and (3) failed to factor Jordan's obesity into the RFC assessment. The Commission's regulations provide a detailed outline of how an ALJ is to review and weigh the opinions of physicians. *See* 20 C.F.R. § 404.1527. An ALJ must evaluate every medical opinion, whether from a non-examining or treating physician, according to the following factors: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors such as familiarity with the Commission's standards and procedures. *See id.* at (d). Furthermore, each opinion is weighed equally, except for those from treating sources which may receive controlling weight provided that they are well-supported by medically acceptable techniques and not inconsistent with substantial evidence in the case. *Id.* at (d)(2). If an opinion from a treating physician is not supported by the evidence, then an ALJ is free to determine the appropriate weight based on the above factors as well as the nature, length, and frequency of the treatment relationship. *Id.* The Fifth Circuit has repeatedly

4

held, though, that at any point in the evaluation of a claim an ALJ may reject a physician's opinion if the evidence supports a contrary conclusion. *See Spellman v. Shalala*, 1 F.3d 357, 364-65 (5th Cir. 1993); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1994). Finally, physicians' opinions on an issue reserved to the Commissioner, such as whether a claimant is "disabled" or "unable to work," are not considered medical opinions, and regardless of who they are from, they are given no special significance. 20 C.F.R. § 404.1527(e).

Turning to the record, the ALJ rejected both consultative physicians' opinions with good cause and after noting substantial countervailing evidence. In April 1997, Weiss performed a consultative examination in connection with the first hearing of Jordan's application. Weiss' resulting assessment was that Jordan had "instability in the mid lumbar, with sublaxation, with indication there is gross instability there," and that this caused "sufficient pain and discomfort preventing her from doing most any gainful employment activities." Tr. 241-42. Weiss also opined that Jordan should not do any "prolonged sitting, standing, and no walking of any extent." *Id.* Weiss' opinion, however, was not entirely negative, and, in fact, it contained several positive or normal findings. Weiss noted that Jordan's back alignment and range of motion in her knees were "okay" and that there was tenderness over the lower lumbar spine, but not over the sciatic notches. *Id.* Weiss also noted that Jordan's obesity added to her discomfort and that, if reduced, her condition might improve. Tr. 242.

While Jordan claims that the ALJ "engaged in an impermissible medical assessment of his own undertaking" in rejecting both physicians' opinions, the record demonstrates, instead, that the ALJ rejected each opinion based on its inconsistency and unsupportability when compared with the record. *See* 20 C.F.R. § 404.1527. With Weiss' opinion that Jordan could not

5

engage in any gainful employment, the ALJ began by noting the normal observations Weiss made during the examination and noted that Jordan's remark about only experiencing "some pain" was not consistent with Weiss' opinion. Tr. 28, 241-42. The ALJ also noted that Jordan had not sought medical treatment for over a year prior to the examination, providing additional evidence of the opinion's inconsistency. Finally, the ALJ discussed other medical evidence and tests dated within six months of Weiss' examination that indicated Jordan had good mobility, strength, and sensation. Tr. 28, 245-46. Rather than selectively "picking and choosing" evidence to support a preconceived conclusion, as Jordan alleges, the ALJ simply noted the inconsistencies in Weiss' opinion and the recent contrary medical evidence. In short, the evidence that the ALJ cited as a basis for affording no significant weight to Weiss' opinion is such that a "reasonable mind might accept as adequate to support [the] conclusion." *Muse*, 925 F.2d at 789.

From an examination on May 14, 1998, Po, the second consultative physician in this case, offered several opinions regarding Jordan's postural limitations and employment capabilities. Po, an orthopedic specialist, evaluated Jordan, analyzed her previous medical records and subjective complaints, and concluded that Jordan could frequently lift up to ten pounds, could occasionally lift twenty-five pounds, but could never climb, balance, stoop, crouch, kneel, crawl, engage in pushing or pulling motions, work around heights or moving machinery, or be exposed to vibrations. Tr. 332-337. Earlier in his assessment, however, Po stated that Jordan should only "avoid frequent kneeling, squatting, and climbing." Tr. 334.

As with Weiss' opinion, the ALJ rejected Po's postural limitations based on the absence of supporting medical evidence. Recognizing that the limitations Po assigned were based only on Jordan's back problems, the ALJ noted that the results of several medical tests focused on that

6

area failed to corroborate Po's opinion of Jordan's restricted flexibility and posture. Specifically, the ALJ stated:

> [T]he negative straight leg raising does not corroborate the limitation of spinal motion demonstrated by the claimant and the additional failure of the examination to reveal any lumbar spasm either with palpation or alternate leg standing is not indicative of the degree of pain claimant alleged or of the postural limitations the physician assessed.

Tr. 27, 333-334. As stated above, it is wholly within an ALJ's discretion to reject a physician's opinion if it is unsupported by the evidence or otherwise inconsistent, and that is precisely what the ALJ did here. *See* 20 C.F.R. § 404.1527; *Spellman*, 1 F.3d at 364-65; *Bradley*, 809 F.2d at 1057. Contrary to Jordan's claims, the ALJ did not substitute his own medical opinion for the physician's; he simply noted that the physician's opinion lacked the support and corroboration of several documented medical tests. This is an ALJ's obligation in assessing a claimant's RFC, and the ALJ's assessment here is based on substantial evidence.[2]

Jordan also asserts a general claim that the ALJ failed to take her obesity into account in assessing her RFC and, in rejecting the limitations that the consultative physicians assigned, improperly minimized the impact of her obesity. Pursuant to the Commission's regulations, an ALJ is required to consider a claimant's obesity at nearly every step of the sequential analysis, including whether the claimant's RFC permits him to return to his past relevant work or any

---

[2] The ALJ's final RFC assessment provides:
[T]he claimant retained the residual functional capacity to lift and carry up to 20 pounds occasionally, 10 pounds on a regular basis, sit stand and/or walk for up to a total of 6 hours out of 8, and 2 hours continuously, occasionally climb, balance, stoop, crouch, kneel and crawl, handle objects and reach. She was precluded from performing work at heights, around dangerous machinery or vibration and work requiring the operation of foot controls.
Tr. 30.

available employment. Soc. Sec. Ruling 02-1p. In this case, the ALJ's decision is replete with references to Jordan's obesity and how it affected the ALJ's conclusion. Tr. 25-27. In fact, the ALJ stated that Jordan's obesity, when combined with her other impairments, "precluded her from walking and/or standing in excess of total of 6 hours out of 8 and continuously walking or standing for more than two hours and could not perform more than occasional kneeling, squatting, climbing, or crawling." Tr. 27. The record demonstrates that the ALJ adequately considered Jordan's obesity, and supports the ALJ's finding that Jordan's obesity, while indeed debilitating and relevant to the consultative physicians' opinions, was not a basis for ignoring those opinions' inconsistencies or lack of evidentiary support.

Limitation in Hypothetical Questions to Vocational Expert

Jordan's final complaint is that, during the hearing, the ALJ erred by not including Weiss' and Po's stated limitations in his questions to the vocational expert. So long as a claimant's representative is given an opportunity to correct any deficiencies in an ALJ's hypothetical questions, those questions need only "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala*, 36 F.2d 431, 436 (5th Cir. 1994); *see also Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985) (ALJ not bound by opinion based on assumed disabilities which are not in fact part of RFC). For the reasons previously discussed, the ALJ's decision to assign no significant weight to the consultative physicians' opinions of Jordan's residual functional capacity was supported by substantial evidence. Therefore, the ALJ reasonably incorporated all the impairments he accepted in the hypotheticals proffered to the vocational expert and properly excluded those expressed by Po and Weiss which he found were not supported by the evidence.

Conclusion

The record shows that the ALJ's decision is supported by substantial evidence. The ALJ gave full consideration to all of the physicians' opinions, but was ultimately forced to resolve various internal and external conflicts surrounding those opinions. Although, on this record, the undersigned might have rendered a different conclusion, it cannot be said that the ALJ's resolution and ultimate decision were not based on substantial evidence. Accordingly, the ALJ was not required to incorporate the rejected opinions into the hypothetical questioning of the vocational expert.

**For the reasons stated above, it is recommended that the Commissioner's decision to deny benefits for the time period in question be AFFIRMED, and that this civil action be DISMISSED with Prejudice.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 10th day of January, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE